Affirmed and Memorandum Opinion filed October 20, 2005









Affirmed
and Memorandum Opinion filed October 20, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00907-CV

____________

 

DOLORES JENNINGS, Appellant

 

V.

 

MARK C. HATFIELD, Appellee

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 03-26012

 



 

M E M O R A N D U M   O P I N I O N

Appellant Dolores Jennings sued appellee
Mark C. Hatfield after the parties were involved in a minor traffic accident.  Appellant raises three issues on appeal: (1)
appellee=s  open-ended pre-trial settlement offer is
enforceable despite the jury=s having reached a
verdict; (2) the trial court erred in excluding the testimony of appellant=s accident
reconstruction expert, which resulted in an erroneous verdict; and (3) the
trial court erred by excluding evidence of certain medical expenses.  We affirm.

 








Background 

The parties were involved in a minor
traffic accident on May 24, 2001. 
Although the facts are disputed, the collision apparently occurred while
the parties were driving through a construction zone in adjacent lanes, and one
vehicle crossed into the other vehicle=s lane.  Appellant later complained of neck, back, and
shoulder  pain, and had surgery
approximately two years after the accident. 
Appellant sued to recover the costs of her medical treatment, which she
claims to be $83,976.00.

During discovery, appellee served requests
for disclosure and requests for production of documents on appellant, including
requests regarding appellant=s expert witnesses
and her medical bills.  Specifically,
appellee=s Request for
Disclosure (f)(4)(A) requests A[a]ll documents,
tangible things, reports, models, or data compilations that have been provided
to, reviewed by, or prepared by or for the expert in anticipation of the expert=s testimony.@ However, when
appellant first responded on September 15, 2003, she listed only the experts= contact
information and did not produce any documents. 
Additionally, appellee=s Request for
Disclosure (d) asked for the amount of economic damages and the method of
calculation, to which appellant responded: AAmount of medical
bills past and future.  Lost time from
work, past and future at the amount [appellant] was earning.  The amounts will be supplemented.@  Appellant also responded AWill supplement@ to appellee=s Request for
Disclosure (j), which addressed appellant=s relevant medical
bills and records.








On September 15, 2003, appellant also
responded to appellee=s requests for production of
documents.  Appellee=s Request for
Production No. 8 sought documents about consulting experts, and Request for
Production No. 9 asked for A[a]ll documents
and things including all tangible reports, physical models, compilations of
data and other material prepared by an expert of [sic] for an expert in
anticipation of the expert=s trial and
deposition testimony; and any such materials prepared by an expert used for
consultation whose work product or opinions have been reviewed, either in whole
or in part, by any expert who is to be called as a witness.@  Objecting to both of these requests as A[d]uplicitous of
Request for Disclosure,@ appellant did not produce the requested
materials.

On February 16, 2004, appellant
supplemented her responses to appellee=s requests for
disclosure.  While appellant gave a
figure for lost income, she again responded Awill supplement@ to appellee=s request for
medical bills and records and still did not produce any documents.  Appellant also supplemented her response to
appellee=s request
regarding testifying expert witnesses by supplying the name and contact information
of her reconstruction expert, Dr. Mike E. James, Jr., and further stated: ACurriculum Vitae
of Mike E. James, Jr., Ph.D., P.E. has been previously produced.  A copy of Dr. Mike E. James= file is available
in this office for review upon request.@ 

On April 12, 2004, shortly before trial,
appellant submitted her second supplemental response to appellee=s requests for
disclosure and her first supplemental responses and objections to appellee=s requests for
production of documents.   In response to
appellee=s request about
economic damages, appellant stated that her income tax returns from 1999-2002
had been previously produced.  Regarding
her testifying expert, appellant stated that A[t]he basis of his
testimony will be reconstruction of the accident and causation,@ and
reiterated  that ACurriculum Vitae
of Mike E. James, Jr., Ph.D., P.E. has been previously produced.  A copy of Dr. Mike E. James= file is available
in this office for review upon request.@  Similarly, in response to appellee=s Request for
Disclosure (j), appellant repeated that A[appellant=s] medical bills
are available in this office for review upon request.@ Appellant gave
the same response to appellee=s Request for
Production No. 6, which asked for  A[c]opies of all
medical records, reports, x-rays, bills and other documentation relating to the
injuries or damages asserted by [appellant].@








In a letter dated April 19, 2004, appellee
demanded that appellant produce the 
requested documents.  Appellant
responded once more that the documents were available in her attorney=s office, and also
asked whether appellee desired an expert report or an expert deposition.  Appellee did not reply, but filed a motion to
strike in early May 2004, alleging that appellant had failed to produce the requested
documents and to provide the requisite information about her expert
witnesses.  On May 11, 2004, appellee
offered to settle for $50,000, the limits of appellee=s insurance
policy.  Although the offer did not
contain a specific time-frame, it referenced the impending hearing on the
motion to strike and the trial.  The
offer also stated that Athis offer is made with the understanding
that the [appellant] will execute a full and final release of any and all
claims which are or could have been asserted and for a full dismissal of the
above-referenced lawsuit.@

When the case proceeded to trial, the
court excluded the expert testimony and documents referenced in appellee=s motion to
strike.  The court also excluded the
testimony of two doctors regarding the reasonableness of certain medical
expenses, so that the jury heard evidence of $59,562.96 in damages instead of
$83,976.00.

The jury awarded $3,673.00 in damages
after finding that appellant and appellee 
were equally at fault.  After the
verdict, appellant purported to accept the settlement offer, and filed a motion
for new trial and to enforce the settlement on July 9, 2004.  The trial court denied this motion and
appellant appealed,  alleging three
points of error:  (1) the settlement
offer is binding and should be enforced; (2) the exclusion of Dr. James= testimony was
erroneous and resulted in an erroneous verdict; and (3) the exclusion of expert
testimony addressing the reasonableness and necessity of certain medical
expenses was erroneous.

Analysis








In her first point of error, appellant
alleges that she properly accepted appellee=s pre-trial
settlement offer after the jury reached a verdict, and therefore that the
settlement agreement is enforceable.  We
disagree.  The Fifth Circuit has
recognized Texas courts= definition of Asettlement@ as Athe conclusion of
a disputed or unliquidated claim, and attendant differences between the
parties, through a contract in which they agree to mutual concessions in order
to avoid resolving their controversy through a course of litigation.@  McCleary v. Armstrong World Industries,
Inc., 913 F.2d 257, 259 (5th Cir. 1990). 
Because settlements are contracts, basic contract principles apply.  Shamrock Oil Co. v. Gulf Coast Natural
Gas, Inc., 68 S.W.3d 737, 741 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  One such principle
is that the offeree=s power of acceptance does not continue
indefinitely, but terminates after a reasonable time.  Advantage Physical Therapy, Inc. v. Cruse,
165 S.W.3d 21, 26 (Tex. App.CHouston [14th
Dist.] 2005, no pet.); see also Restatement
(Second) of Contracts _ 41(1) (1981) (AAn offeree=s power of
acceptance is terminated at the time specified in the offer, or if no time is
specified, at the end of a reasonable time.@).  What constitutes a reasonable time depends on
the circumstances in each case, including the nature and character of the thing
to be done and the difficulties surrounding and attending its
accomplishment.  Id.; see also Restatement (Second) of Contracts _ 41(2) (1981) (AWhat is a
reasonable time is a question of fact, depending on all the circumstances
existing when the offer and attempted acceptance are made.@).  Determining what constitutes a reasonable
time may become a question of law where the significant facts are not in
dispute.  Christy v. Andrus, 722
S.W.2d 822, 824, (Tex. App.CEastland 1987, ref=d. n.r.e.).  Furthermore, if an offer contains terms indicating
that it expires at a certain time, the offer cannot be accepted after that time
has passed.  Lacquement v. Handy,
876 S.W.2d 932, 936 (Tex. App.CFort Worth 1994,
no pet.).  In determining whether an
offer contains a fixed time limit, the court must view the offer in light of
all the surrounding circumstances.  Id.
  In cases of doubt, the court should
adopt the meaning that is more favorable to the offeree.  Id.








Examining the offer in light of all the
surrounding circumstances, we find that appellant=s reasonable time
for acceptance ended when she proceeded to trial; therefore, appellant=s power of
acceptance no longer existed when she tried to accept the settlement offer
post-trial.  Even when construed against the
drafter, the offer=s language clearly suggests that the purpose of the offer was
to avoid a trial and its inherent variables and uncertainties.  Although the offer does not mention a
specific deadline, appellee states that Ain light of the impending trial and
the Motion to Strike Exhibits pending before the Court, I am hopeful that this
case may be resolved.@ 
Appellee also explains that Athis offer is made
with the understanding that the [appellant] will execute a full and final release
of any and all claims which are or could have been asserted and for a full
dismissal of the above-referenced lawsuit.@  This language suggests that the offer would
expire once trial began, or certainly once the jury reached a verdict.  Therefore, the settlement offer had expired by its own terms
by the time appellant attempted to accept. 
Furthermore, finding that appellant=s power of acceptance terminated once
the case proceeded to trial is consistent with the above-mentioned definition
of a settlement: Aa contract in which [parties] agree to mutual concessions
in order to avoid resolving their controversy through a course of
litigation.@  McCleary,
913 F.2d at 259 (emphasis
added).[1]
 

Appellant urges us to follow Padilla v.
LaFrance, where the supreme court held that writings between the parties
constituted a valid Rule 11 agreement.  See Padilla v.LaFrance, 907 S.W.2d 454, 461 (Tex. 1995). However, we find
that case distinguishable.  In Padilla,
the plaintiffs= attorney, Mr. Steidley, made a demand for
policy limits on April 10th, and required payment by 5:00 on April 23rd.  After trying unsuccessfully to contact
Steidley to discuss medical liens, the insurance adjuster, Mr. Bradshaw, faxed
a  letter on April 23rd to confirm the
settlement agreement; however, he did not mail any checks.  That same day, Steidley responded that Athis letter will
confirm that the above referenced matter has been settled,@ and asked the
insurance company to forward the checks. 
Bradshaw received Steidley=s confirmation on
the morning of April 24th, and defendant=s attorney, Mr.
Chandler, tendered the checks a week later. 
However, Steidley refused to accept the checks and claimed that the
defendant had not timely accepted the April 10th offer.  All of these communications took place before
trial.[2]  The supreme court held that the writings
constituted a binding settlement agreement, reasoning that Steidley=s confirmation
that Athe above
referenced matter has been settled@ indicated that
the defendant could timely accept without immediately tendering the checks,
despite the language of the original offer.








However, in the present case, there were
no such pre-trial settlement confirmations between the attorneys.  As previously discussed, appellee made the
offer before trial, but appellant attempted to accept only after the jury
awarded a mere $3,673.00 in damages. 
Additionally, the offer explicitly referenced the impending trial and
stated that it was made with the understanding that appellant would release all
claims and fully dismiss the lawsuit. 
Unlike in Padilla, there is no indication that appellee consented
to the alteration of any of the offer=s terms;
therefore, the offer expired according to its terms when trial commenced, as
did appellant=s reasonable time for acceptance. 

Appellant also suggests that the Stowers
doctrine extended appellant=s time  to accept the settlement.  However, appellant neither cites authority to
support this position nor explains her reasoning.  Therefore, we will not consider this
argument.  Tex. R. App. P. 38.1(h) (A[Appellant=s] brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@)

Thus, in light of all the surrounding
circumstances, we find that a reasonable time for acceptance had passed and
that appellant=s power of acceptance had terminated by
the time she attempted to accept the settlement offer.   Accordingly, we overrule appellant=s first point of
error. 

In her second point of error, appellant
alleges that the trial court erred by excluding the reconstruction testimony of
Dr. James, and that this resulted in an erroneous verdict.  We review a trial court=s decision
relating to exclusion of expert testimony under an abuse of discretion
standard.  Dewitt v. Prudential Ins.
Co. of Am., 717 S.W.2d 414, 417 (Tex. App.CHouston [14th
Dist.] 1986, no writ).  To establish an
abuse of discretion, the complaining party must show that the trial court=s actions were
arbitrary or unreasonable in light of all the circumstances of a particular
case.  Id.  








The trial court did not abuse its
discretion by excluding the testimony of Dr. James based on the insufficiency
of appellant=s responses to appellee=s requests for
disclosure. When a testifying expert is employed by the responding party, the
requesting party may request disclosure of Athe general
substance of the expert=s mental impressions and opinions and a
brief summary of the basis for them,@ as well as Aall documents,
tangible things, reports, models, or data compilations that have been provided
to, reviewed by, or prepared by or for the expert in anticipation of the expert=s testimony.@  Tex. R. Civ. P. 194.2(f)(3),
(f)(4)(A).  A party who fails to make,
amend, or supplement a discovery response in a timely manner may not introduce
into evidence the material or information that was not timely disclosed, absent
a showing of good cause or lack of unfair surprise or prejudice to the
requesting party.  Tex. R. Civ. P. 193.6(a)(1),
(a)(2).  The party seeking to introduce
the evidence has the burden of establishing good cause and lack of unfair
surprise or prejudice.  Tex. R. Civ. P. 193.6(b).  The trial court decides in its discretion
whether the party has established good cause or lack of unfair surprise or
prejudice.  Dewitt, 717 S.W.2d at
417.

Appellee=s Request for
Disclosure (f)(4)(A) asked for A[a]ll documents,
tangible things, reports, models, or data compilations that have been provided
to, reviewed by, or prepared by or for the expert in anticipation of the expert=s testimony.@  However, when appellant first responded in
September, she listed only certain experts= contact
information.  No information about Dr.
James appeared in this initial response. 
Appellant supplied Dr. James= contact
information in February, and also stated: 
ACurriculum Vitae
of Mike E. James, Jr., Ph.D., P.E. has been previously produced.  A copy of Dr. Mike E. James= file is available
in this office for review upon request.@  In April, appellant revealed that the general
substance of Dr. James= testimony would be Areconstruction of
the accident and causation,@ and repeated that
ACurriculum Vitae
of Mike E. James, Jr., Ph.D., P.E. has been previously produced.  A copy of Dr. Mike E. James= file is available
in this office for review upon request.@  Later in April, in response to appellee=s letter,
appellant reiterated that the requested materials were available in her
attorney=s office, and
inquired whether appellee desired an expert report or an expert
deposition.  Appellant never provided
appellee with an expert report; furthermore, appellant acknowledges that Dr.
James= file did not
contain an expert report.








The trial court did not err by
finding  that appellant=s responses were
inadequate under Rule 194.   Although
appellant urges us to follow the reasoning in Garza v. Tan, we find the
present case to be distinguishable.  See
Garza v. Tan, 849 S.W.2d 430 (Tex. App.CCorpus Christi
1993, no pet.).  In Garza, the
appellants claimed that the appellees failed to supplement their
interrogatories and that the substance of their expert=s testimony was
not timely produced as required under Rule 166b(6)(b).[3]  Id. at 433.  Rule 166b(6)(b) required a supplemental
response to include only Athe name, address and telephone number of
the expert witness and the substance of the testimony concerning which the
expert witness is expected to testify, as soon as is practical, but in no event
less than thirty (30) days prior to the beginning of trial except on leave of
court.@  Id. at 434.  The appellees= interrogatories included
the names, addresses, and phone numbers of their expert doctors and stated that
they would testify about the standard of care and medical treatment.  The appellees also provided each doctor=s expert
reports.  Id.  The Garza court held that the
appellees= interrogatories and expert reports
adequately disclosed the substance of their experts= testimony, and
therefore, that the appellees= responses were
timely.  Id.  








However, in the present case, appellant=s responses to
appellee=s requests for
disclosure did not comply with Rule 194.2(f). 
As we previously stated, Rule 194.2(f) requires disclosure of Athe general
substance of the expert=s mental impressions and opinions and a
brief summary of the basis for them,@ as well as any
reports prepared or reviewed by the testifying expert.  Tex.
R. Civ. P. 194.2(f)(3), (4)(A). 
Although appellant stated vaguely that the substance of Dr. James= testimony would
be Areconstruction of
the accident and causation,@ appellant failed
to disclose Dr. James= general opinions about those matters, and
likewise failed to provide a brief summary of the basis for his opinions.  Furthermore, unlike the appellees in Garza,
appellant never provided appellee with Dr. James= expert report;
indeed, no such report ever existed in Dr. James= file.  Thus, because appellant failed to make,
amend, or supplement her response to include all the required information regarding
Dr. James= testimony, the trial court did not abuse
its discretion by excluding Dr. James= testimony under
Rule 193.6(a).  See Moore v. Mem=l Hermann Hosp.
Sys., Inc., 140 S.W.3d 870, 875 (Tex. App.CHouston [1st
Dist.] 2004, no pet.).  Therefore, we
overrule appellant=s second point of error.

In her third point of error, appellant
alleges that the trial court erred by not admitting into evidence the full
amount of appellant=s medical bills.  We disagree. 
In a document entitled ADolores Jennings= Summary of
Medical Charges of Undisputed Charges that are Reasonable and Necessary For the
Treatment But as to Which Defendant Disputes Causation From the Accident on
5/24/01,@ the parties
stipulated that appellant=s medical bills totaled $59,562.96.  The record does not support appellant=s contention that
she is entitled to $83,976.00; any testimony that such an amount was reasonable
and necessary does not change the fact that appellant had stipulated to
$59,562.96.  See Perry v. Brooks,
808 S.W.2d 227, 228 (Tex. App.CHouston [14th
Dist.] 1991, no pet.) (trial court properly excluded additional  medical bills because they conflicted with
parties= stipulation that
the reasonable and necessary bills totaled $3000); see also Handleman v.
Handleman, 608 S.W.2d 298, 301 (Tex. Civ. App.CHouston [14th
Dist.] 1980, writ ref=d n.r.e.) (stipulations are conclusive as
to the facts stipulated and to all matters necessarily included therein).  Therefore, the trial court did not abuse its
discretion by admitting evidence of medical expenses only in the amount to
which appellant stipulated.  Accordingly,
we overrule appellant=s final point of error, and therefore
affirm the holding of the trial court.

 

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment
rendered and Memorandum Opinion filed October 20, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

 











[1]  While we
recognize that some cases settle post-trial, this not does affect our analysis
in this case. 





[2]  The trial
court granted summary judgment in favor of plaintiffs on the settlement
issue.  The court of appeals affirmed,
concluding that the letters did not constitute an enforceable Rule 11
agreement.  The supreme court held that
the letters did constitute a valid Rule 11 agreement, and consequently reversed
and remanded with instructions.  Padilla,
907 S.W.2d at 458.





[3]  This rule has been revised and is
now contained in Rule 193.5.  Tex. R. Civ. P. 193.5(b).